No. 49,193

State of Kansas, *Appellee,* v. Hillard Amon Thornton, *Appellant.*

(577 P.2d 1190)

Opinion filed May 6, 1978.

*Michael G. Coash,* of Bond, Bond & Coash, of El Dorado, argued the cause and was on the brief for the appellant.

*Geary N. Gorup,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Miller, J.: This is a direct appeal by the defendant, Hillard Amon Thornton, from convictions of seven charges of violation of the Uniformed Controlled Substances Act, K.S.A. 1977 Supp. 65-4127b(b)(3). All charges involved marijuana. Thornton was sentenced to concurrent terms of not less than two nor more than ten years on counts 1, 2, and 3, and to sentences of not less than two nor more than ten years on counts 4, 5, 6, and 7, these to be served consecutively to the sentence on count 1. Since the record is silent, we presume that the sentences on counts 4, 5, 6, and 7 are concurrent with each other. K.S.A. 21-4608.

Defendant contends that the trial court erred (1) in refusing to allow the defendant to present alibi evidence, (2) in his instructions to the jury, (3) in allowing the prosecution to present rebuttal evidence which did not refute, and which exceeded the scope of, defendant's evidence, (4) in finding that the evidence was sufficient to sustain the verdict, and (5) in allowing the

prosecution to charge and the jury to convict on both possession with intent to sell, and sale, of the same marijuana.

The charges against Thornton stem from four separate incidents. On December 14, 1976, undercover narcotics agents contacted Thornton, after they had let it be known that they were in the market to purchase two pounds of marijuana. Thornton directed the officers to an address in El Dorado, and announced that he needed $285 for the two pounds. The officers refused to deal in that fashion and stated that they wanted to deal directly. Thornton then directed them to another residence, where he went in, stayed briefly, and returned to the car, telling the agents that they would have to leave for awhile because they were not supposed to be there when the marijuana came. They left, returned about fifteen minutes later, entered the residence, and one of the agents then purchased two pounds of marijuana from Stephen W. Carlisle for $285. The remaining six counts involved three other incidents. On December 17, 1976, Officer Grow purchased one ounce of marijuana from the defendant for $12. On December 22, he purchased an additional ounce for the same amount; and a similar transaction occurred on December 26.

Thornton was charged in count 1 with aiding, abetting and procuring another, Stephen W. Carlisle, to commit a crime, selling marijuana. Counts 2, 4, and 6, respectively, charged Thornton with separate sales of marijuana on December 17, 22, and 26. Counts 3, 5, and 7 charged Thornton with possession with intent to sell marijuana on December 17, 22, and 26.

The trial was held during April, 1977. Trial counsel had been appointed shortly prior thereto, and no notice of alibi had been given pursuant to K.S.A. 22-3218. The court denied defendant's request for leave to file notice of alibi out of time. Defendant's first contention is that it was error for the court to deny the defendant the right to produce alibi evidence, in view of the fact that less than a month after trial, in *Talley v. State,* 222 Kan. 289, 564 P.2d 504 (1977), we held the alibi statute, K.S.A. 22-3218, unconstitutional.

We have carefully examined the transcript in this case, and conclude that the alibi statute was not enforced by the court as against this defendant. The defendant was, of course, permitted to testify fully as to his alibi defense. The defendant was then permitted to call his alibi witnesses, and each testified on direct

examination that the defendant was not at the locations desig-
nated in counts 2 through 7 inclusive, at the specified times. On
cross-examination, each witness testified precisely where the de-
fendant was during that period of time, and thus the alibi testi-
mony was fully presented to the jury. The defendant does not
now suggest the existence of other evidence, which he was
precluded from utilizing. We conclude that the defendant was not
prejudiced, and the ruling of the trial court based upon K.S.A.
22-3218, while erroneous, was not prejudicial.

We turn next to defendant's contention that the court erred in
using the word "procure" in the instructions relating to aiding
and abetting in the sale of marijuana (count 1), and in using the
same word in the instruction defining the defense of "procuring
agent." The court instructed the jury in instruction No. 7 that, in
order to establish the charge contained in count 1, the claim must
be proved that the defendant did aid, abet or *procure* Stephen W.
Carlisle to commit the crime of selling marijuana. This was
immediately followed by a definitions instruction, in which the
court stated:

"As used in these instructions the following words are defined as indicated:

" '*procure*' means to bring a buyer and seller together so that the seller has an
opportunity to sell." (Emphasis supplied.)

By instruction No. 17, the court informed the jury that:

"It is a defense to the charge against the defendant for the sale of marijuana if
the defendant acted only as a procuring agent for the purchaser.

"A procuring agent for the purchaser is a person who, by agreement with the
purchaser, buys or *procures* an article or a substance at the request of and for the
purchaser. The agreement may be written, oral or implied by the behavior of the
parties.

"It is not a defense where the defendant acted as a seller or as an agent for the
seller." (Emphasis supplied.)

The word "procure" is used in one of the statutes under which
the defendant was charged, K.S.A. 21-3205(1). The word was
used in the information upon which defendant was being tried.
The court's instruction on procuring agent follows the suggested
form set out in PIK Crim. (1975 Supp.) 54.14-A.

Defendant argued to the trial court and argues now, that the
court should have used the phrase, "agent for the purchaser"
instead of "procuring agent"; and he contends that the instruc-
tions as given could be confusing to the jury.

We have reviewed the instructions and do not find them confusing. The defense of "procuring agent" was argued succinctly by counsel in their closing arguments. Under all of the circumstances we conclude that the jury could not have been misled.

Defendant next claims that the trial court erred in not limiting the scope of the state's rebuttal evidence. The state called two defense witnesses in rebuttal, and "cross-examined" them as to their testimony. While this line of questioning should have been pursued when the witnesses were cross-examined, the testimony was admissible under K.S.A. 60-420. We have examined the transcript, and conclude that the trial court did not abuse its discretion in admitting this testimony in rebuttal.

Defendant contends that the evidence is not sufficient to form the basis for a reasonable inference of guilt. Viewing the evidence in the light most favorable to the prevailing party, we disagree. There is ample evidence to support the verdict.

Finally, defendant contends that the court erred in allowing the prosecution to charge and the jury to convict on both sale of marijuana and possession with intent to sell the same marijuana. We agree.

In *State v. Lassley,* 218 Kan. 758, 545 P.2d 383, we said:

"It is a generally accepted principle of law that the state may not split a single offense into separate parts. Where there is a single wrongful act it generally will not furnish the basis for more than one criminal prosecution. (*State v. James,* 216 Kan. 235, 531 P.2d 70; *State v. Gauger,* 200 Kan. 515, 438 P.2d 455.) In *State v. Lora,* 213 Kan. 184, 515 P.2d 1086, we stressed that duplicity does not depend on whether the facts proved at trial are actually used to support the conviction of both offenses; rather, it turns on whether the necessary elements of proof of the one crime are included in the other." (p. 761.)

Thornton was originally charged with three counts of sale of marijuana, based on his three separate sales of one ounce of marijuana to Officer Grow for $12 each. Prior to trial, the state filed an amended information by which it charged six offenses arising out of the three incidents with Officer Grow. Each incident was charged as a sale, and as possession with intent to sell.

Although the elements of the two offenses are different, and although we have held that possession of marijuana is not a lesser included offense in a prosecution for sale of marijuana (see *State v. Woods,* 214 Kan. 739, 522 P.2d 967 [1974]), we are convinced that the offense of possession of marijuana with intent to sell is merged with the crime of sale of marijuana where, as here, the

sale was consummated. In *Prince v. United States,* 352 U.S. 322, 1 L.Ed.2d 370, 77 S.Ct. 403 (1957), the United States Supreme Court held that the offense of entering a bank with the intent to commit a felony or larceny therein was merged with the crime of bank robbery when the latter crime was consummated. The court said:

". . . [T]he heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated. . . ." (p. 328.)

Here, the state charged that Thornton possessed marijuana with the intent to sell it. He sold it to Officer Grow. The intent to sell merged into the crime of sale when the sale was consummated.

The convictions and sentences on counts 3, 5, and 7 for possession of marijuana with intent to sell are reversed and the trial court is directed to vacate the same without a hearing thereon and without the defendant or his counsel being present. The convictions of and the sentence for aiding, abetting, and procuring the sale of marijuana, as charged in count 1 of the information, and the convictions and sentences for sale of marijuana, as charged in counts 2, 4, and 6 of the information, are affirmed.